The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modifications. Neither party requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On the date of injury by accident giving rise to this claim, decedent was a self-employed independent contractor who was performing tree climbing and other logging services for Greenes Tree Service, Inc.
3. Greenes Tree Service, Inc. leased employees and subcontractors to Magna Corporation.
4. Workers compensation insurance was secured by Greenes Tree Service, Inc. through Magna Corporation. Premium payments in the amount of $80.03 were deducted from decedents weekly paychecks for the purchase of workers compensation insurance through Magna Corporation.
5. Decedents average weekly wages are to be determined from the evidence offered at the hearing before the Deputy Commissioner.
6. Plaintiff contends and defendant denies that on or about April 6, 1998, decedent stepped in a hole and experienced an accidental injury to his back arising out of and in the course of his employment.
7. The issues to be determined by the Commission are as follows:
a) Whether decedent sustained an injury by accident while in the course and scope of his employment on or about April 6, 1998.
b) What benefits, if any, plaintiff is entitled to receive.
c) Whether decedents disability is related to any injury he may have sustained on or about April 6, 1998.
d) Whether decedent refused suitable employment offered to him by defendant after he was released to return to light duty.
e) Whether defendant is entitled to a credit for any wages decedent may have earned following his release to return to work.
f) Whether defendant is entitled to a credit for the time decedent was incarcerated.
g) Whether decedent committed fraud in the prosecution of this claim for benefits.
h) Whether plaintiff or defendant is entitled to penalties, sanctions, and/or attorneys fees.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications as follows:
 FINDINGS OF FACT
1. Decedent was thirty-three years old at the time of this hearing before the Deputy Commissioner. Decedents death occurred approximately 6 months after this hearing. Decedent obtained his GED after dropping out of school in the seventh grade.
2. Decedent started working for defendant on or about October 27, 1997 as a tree climber and logger. His job involved climbing trees while wearing spiked boots and a utility belt so that he could cut and trim trees. The tools he normally used weighed approximately twenty-five pounds. Decedent normally used a chainsaw to trim or cut the trees. The smaller saw used by decedent weighed approximately twenty-five pounds and the larger saws weighed as much as sixty pounds.
3. Decedent cut the trees while they were standing and after they had fallen. It was easier to cut the trees after they were lying on the ground but decedent would still have to apply pressure to the chainsaw to cut through the tree. After cutting the tree down and sawing it into pieces, decedent and decedents coworkers would chip all the small pieces and block the large pieces, then load this debris onto a truck. In order to do his work, decedent would push, pull, bend, twist and lift. It was not unusual for decedent to lift pieces of wood as heavy as 100 pounds.
4. Defendant provided all kinds of tree services including cutting, removal, trimming, treating, and any other service related to trees. Defendant normally employed between 3 to 5 employees to perform the services offered.
5. Defendant paid decedent at a rate of $12.00 per hour. Decedent and the other employees normally worked a 10-hour day four days per week. Decedent normally earned $384.00 per week for working four days. If decedent worked on Friday or Saturday he was paid $100.00 cash for each day but this was not reflected on the payroll books of defendant. Defendant did not withhold any deductions from decedents pay except for $80.03 per week to cover workers compensation premiums. Decedent was not paid by the job or at a fixed rate for any of the jobs he performed for defendant. Defendant has not provided a Form 22 or any tax statements indicating decedents wages.
6. On or about April 6, 1998, decedent was working on a job site, having being sent there by defendant. As he stepped back from a tree he was cutting, he stepped into a hole and when he did he felt immediate pain in his lower back. Decedent continued to work thinking the pain would go away. Decedent completed the job. The next morning plaintiff told Mr. Greene that he thought he might have injured his lower back the day before when plaintiff stepped into a hole as he was cutting a tree.
7. Decedent continued to work at his normal job until the pain became so severe that he was unable to continue to work. When decedent told Mr. Greene that decedent needed to see a doctor, Mr. Greene told him that if decedent went to see the doctor, decedents workers compensation premiums would increase.
8. Defendant sent decedent to see Dr. John B. Lange. Dr. Lange initially saw decedent on or about May 7, 1998. Decedent told Dr. Lange that he had injured his back when he had stepped into a hole while walking away from a tree he was cutting, and while he was carrying a chainsaw. Decedent told Dr. Lange that his back had progressively gotten worse since then and he did not get any relief from aspirin. Dr. Lange diagnosed decedents condition as a low back strain and gave decedent work restrictions. Dr. Lange evaluated decedent as being able to lift up to twenty-five pounds occasionally with no pulling, pushing, bending, or climbing.
9. Decedents condition continued to worsen and Dr. Lange had an MRI performed. The MRI showed that decedent had a disc herniation with an extruded fragment. When Dr. Lange reviewed the MRI, he changed decedents restrictions to no squatting, climbing, or reaching if he was lifting, no over-the-shoulder work, and no lifting more than five pounds. Dr. Lange evaluated decedent as being able to able to sit for six hours a day, 30 minutes at a time. Dr. Lange referred decedent to the Blue Ridge Bone 
Joint Clinic.
10. Defendant did not have any light duty work within the restrictions given to decedent. Mr. Greene indicated that he had a job for decedent cleaning and sharpening the chainsaws and other equipment, delivering equipment to work sites, and stump removal. Mr. Greene and Ms. Judy B. Allen testified that although this was work that needed to be done, it was not done on a regular basis and was not advertised to the public as a viable position. The maintenance work on chainsaws was normally done when it was raining or there was not other work to be performed by the employees. Stump removal was done approximately 2 to 3 times per week, but the record is unclear regarding the actual time spent per week on stump removal.
11. Although decedent and his medical providers advised defendant of decedents need for light duty work, defendant did not inform decedent that they had any light duty work for decedent to perform.
12. Decedent was seen and treated by Dr. Stewart J. Harley initially on June 12, 1998. Dr. Harley diagnosed decedents condition as degenerative disc disease, which became symptomatic as a result of decedents April 6, 1998 accident. Dr. Harley treated decedents condition with an injection of celestone and xylocine. Decedent was put in jail for ten days while being treated by Dr. Harley as a result of a domestic dispute. Dr. Harley found that decedents condition improved while he was in jail as a result of bed rest and the injections.
13. Dr. Harley released decedent to return to light duty work on or about June 26, 1998. Decedent was restricted to no lifting over twenty pounds and no frequent bending. Defendant did not have a job for decedent that was within these restrictions.
14. In July and August 1998, in exchange for rent, decedent and his family members did repair work to a house in which he and his family were living. Decedent had two minor children in his custody.
15. Following his injury, decedent began to receive welfare benefits because he was unable to work and support his family and himself.
16. Decedent attempted to do a number of different jobs since last working for defendant. Those jobs included driving a forklift, laying tile, putting in septic tanks, cutting firewood, and other odd jobs. Decedent was paid $3,734.00 for performing these jobs, and he had to pay $400.00 for help he needed to perform the jobs, leaving him a net of $3,334.00 in earnings. Decedent was unable to continue performing any of these jobs due to the pain he experienced while performing them.
17. Decedent continued to have problems with his back and was seen and initially treated by Dr. James Joseph Hoski, an orthopedic surgeon, on March 3, 1999. Decedent told Dr. Hoski of having experienced an injury to his back when he stepped in a hole while cutting a tree with a chainsaw. Dr. Hoski reviewed the previously taken MRI film of decedents back. It was Dr. Hoskis opinion after reviewing the film that decedent suffered a herniated nucleus pulposus at L5-S1, and that the herniation had resulted from the incident when he had stepped in the hole on April 6, 1998.
18. As of March 3, 1999, Dr. Hoski was of the opinion that decedent could do sedentary work. Decedent continued to be treated by Dr. Hoski and as of August 6, 1999, Dr. Hoski was of the opinion that decedent was able to work with restrictions of occasionally lifting twenty-five pounds, lifting ten pounds frequently, and lifting five pounds on a constant basis. Dr. Hoski recommended that decedent undergo a four week, five days per-week therapy program, including work hardening, aerobic conditioning, myofascial release and modalities, along with counseling services to deal with the chronic pain and depression aspects of decedents work-related injury. Decedent did not undergo this recommended program.
19. When Drs. Harley and Hoski were asked if decedent could have done the various jobs that he performed after his release in June 1998 such as driving a forklift, cutting and hauling firewood, digging holes, setting posts, and doing renovation work on houses with the kind of injury decedent had sustained, neither doctor changed his respective opinion as to decedents diagnosis or as to decedents restrictions. Dr. Harley noted that people would sometimes take jobs that they should not when they have to work for family survival. Dr. Harley went on to say that he thought decedent should have a desk job in which decedent was not lifting at all, but he did not think that such a position would be made available to decedent.
20. Although defendant raised the issue of fraud, defendant did not produce any evidence of fraud by decedent.
21. Decedent acted as a sole proprietor of a business who elected to be included in workers compensation insurance coverage as he worked on jobs for Greenes Tree Service and Magna Corporation and, in effect, paid monthly insurance premiums for himself.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a sole proprietor of a business who elected to be included in workers compensation insurance coverage as he paid his own premiums and worked on jobs for Greenes Tree Service and Magna Corporation, decedent is entitled to employee benefits under the Workers Compensation Act. N.C. Gen. Stat. 97-2(2).
2. Decedent sustained a compensable injury by accident arising out of and in the course of his employment on or about April 6, 1998. N.C. Gen. Stat. 97-2(6).
3. Decedents average weekly wage on April 6, 1998 was $384.00 per week, which yields a compensation rate of $256.01 per week. N.C. Gen. Stat. 97-29.
4. Plaintiff is entitled to receive temporary total disability benefits at the rate of $256.01 per week from May 7, 1998 and continuing until March 20, 2000, the date of decedents death. Defendant is entitled to a credit in the amount of $3,334.00 for the wages decedent earned after May 7, 1998 and is not obligated to pay plaintiff compensation during the period decedent was incarcerated. N.C. Gen. Stat. 97-29. Parker v. UnionCamp, 108 N.C. App. 85, 422 S.E.2d 585 (1992).
5. Decedent was entitled to receive medical benefits for so long as they affected a cure, gave relief and/or lessened decedents period of disability. N.C. Gen. Stat. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorneys fees hereinafter awarded, defendant shall pay to plaintiff temporary total disability benefits at the rate of $256.01 per week from May 7, 1998 and continuing thereafter until March 20, 2000. All accrued compensation shall be paid in one lump sum. Defendant is entitled to a credit in the amount of $3,334.00 that shall be deducted from this amount. No compensation benefits are owing to decedent for the period of decedents 10-day incarceration.
2. Defendant shall pay for all medical expenses incurred by decedent as a result of the compensable injury to the extent that such evaluations, treatments and examinations were required to effect a cure, give relief and/or lessen decedents period of disability.
3. An attorneys fee of twenty-five percent (25%) of the accrued compensation due plaintiff shall be deducted and paid directly to plaintiffs attorney.
4. Defendant shall pay the costs of this action.
This the ___ day of December, 2000.
 S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/____________________ BERNADINE S. BALANCE COMMISSIONER
S/____________________ RENE C. RIGGSBEE COMMISSIONER